UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

WILLIAM F. JUCHARTZ, # 439574,    )
    )
    Plaintiff,    )    Case No. 1:14-cv-971
    )
v.    )    Honorable Paul L. Maloney
    )
STEPHEN PHILLIPS, et al.,    )
    )    **REPORT AND RECOMMENDATION**
    Defendants.    )
_____)

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  Plaintiff filed this lawsuit on September 16, 2014, regarding conditions of his confinement at the Carson City Correctional Facility (DRF).  The defendants are Stephen Phillips, D.D.S. and Elizabeth Phillips, D.D.S.  Plaintiff alleges that the dental treatment provided by defendants violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause.[1]  He sues defendants in their individual capacities and seeks an award of damages.  (Compl. at 2, 4, Page ID 2, 4).

       The matter is now before the court on defendants' motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a).  For the reasons set forth herein, I recommend that defendants' motion for summary judgment (docket # 11) be granted and that all plaintiff's claims against defendants be dismissed without prejudice.

_____

    [1]All other claims were dismissed on October 2, 2014.  (docket #s 4, 5).

**Applicable Standards**

**A.      Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir.

-2-

2009).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"  *Dominguez v. Correctional Med. Servs.*, 555  F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a  "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'"  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056.  Accordingly, a summary judgment in favor of the party with the

burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

      **B.**      **Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  "This requirement is a strong one.  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile."  *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[2] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory

---

[2]A copy of the policy directive is found in the record. *See* docket # 12-2, Page ID 66-72.

pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution.  *Id.*  The Policy Directive also provides the following directions for completing Step I grievance forms:  "The issues should be stated briefly but concisely.  Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted.  *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent.  P.D. 03.02.130 at ¶¶ W, X.  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB.  The respondent at Step II is designated by the policy.  The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee.  *Id* . at ¶ DD.  If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶ FF.  The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

after the date the Step II response was due.  *Id.* at ¶ FF.  The Grievance and Appeals Section is the

Step III respondent.  *Id.* at ¶ GG.  The Grievance and Appeals Section forwards grievances regarding

health care issues to the Administrator of the Bureau of Health Care Services (BHCS).  The BHCS

Administrator is required to ensure that the grievance is investigated and a response provided to the

Grievance and Appeals Section in a timely manner.  Time limitations shall be adhered to by the

inmate and staff at all steps of the grievance process.  *Id.* at ¶ S.  "The total grievance process from

the point of filing a Step I grievance to providing a Step III response shall generally be completed

within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the

administrative process.  The Sixth Circuit has "clearly held that an inmate does not exhaust available

administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*,

636 F.3d at 224.  An argument that it would have been futile to file a grievance does not suffice.

Assertions of futility do not excuse plaintiff from the exhaustion requirement.  *See Napier*, 636 F.3d

at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to

file a grievance or abandon the process before completion and claim that he has exhausted his

remedies or that it is futile for him to do so because his grievance is now time-barred under the

regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other

exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## **Proposed Findings of Fact**

The following facts are beyond genuine issue.  Plaintiff was an inmate at the Carson City

Correctional Facility (DRF) from at least September 2012, through September 2014 when he filed

this lawsuit.  The defendants, Stephen Phillips and Elizabeth Phillips, are dentists.  They provided plaintiff with dental care during his incarceration at DRF.

Plaintiff did not pursue any grievance corresponding to the allegations of his complaint against defendants through Step III of the MDOC's grievance process before filing his complaint. (docket # 12-3, Page ID 74).  He filed a grievance in September 2012 regarding dental care and pursued it through Step I of the MDOC's grievance process.  He filed a grievance in April 2014 and pursued through a Step II decision.  He filed a grievance in September 2014 and filed this lawsuit before he had received the Step I response.

### 1.      Grievance No. DRF 12-09-02130-12A

On September 18, 2012, DRF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. DRF 12-09-02130-12A.  In this grievance, plaintiff complained that he had not received timely dental care which caused him to undergo more extensive and expensive dental care than might otherwise have been required:

> I have been on a so called waiting list for a dental exam and cleaning here at DRF for 1 year 6 months [and] prior to transferring here I was on a list at Coldwater for 6 months. [F]or the past year I have had to endure bleeding gums on almost a daily basis (healthcare was informed [of] this in first kite of 8-8-11).  Small cavit[ies] have now turned into large ones [and] from a simple fix to major work [and] from a small cost to a much larger cost to D.O.C. and it's getting worse. [P]olicy (PD 04.06.105) states that I will receive adequate dental care in a timely mann[e]r and that I will receive the same care as those in society.  I cannot see after all this time that anyone would think that this is in any way adequate care in a timely manner.

(docket # 1-1, Page ID 17).  The Step I response is dated October 2, 2012.  The investigation indicated that plaintiff had requested dental care at DRF on August 8, 2011, and that he was placed on the exam/cleaning list.  Plaintiff was evaluated on October 31, 2011, at which time the treating dentist determined that there was no urgent need for treatment.  Plaintiff was evaluated and treated

for emergent needs on March 5, and April 10, 2012.  The Step I grievance response concluded with

a statement that plaintiff was near the top of the list of prisoners awaiting routine dental services and

that he would be seen in the near future:  "Per PD 04.06.150, routine dental services shall be

provided at all CFA institutions and inmates shall be seen in the order of placement on the list.  The

PD also states that treatment priority shall be based on the clinical and professional judgment of the

dentist and cleanings will be completed as time and staff permit.  The grievant remains on the Exam

list and will be seen in the order in which his name appears.  Also informed grievant that his name

is close to the top of the list and he will be scheduled in the near future."  (docket # 1-1, Page ID 18).

There is no evidence of any appeal to Step II.  Plaintiff did not pursue any appeal of this grievance

through a Step III decision.   (docket # 12-3, Page ID 74).

###        2.        Grievance No. DRF 14-04-00763-12A

On April 15, 2014, DRF's grievance coordinator received a grievance from plaintiff and

assigned it Grievance No. DRF 14-04-00763-12A.  In this grievance, plaintiff complained that he

had not received adequate dental care during the period from December 19, 2013, through April 14,

2014, for a tooth that he had been advised needed removal.  The grievance is set forth verbatim

below:

> seen dentist 12-19-13 had pain in tooth it was determined that it had to be pulled but would
> wait till the first of the year and then nothing sent kite 1-31-14 stating I had lost a piece of
> tooth and I was painful the response was I was on the list seen dentist on 2-25-14 to get my
> upper parshels and again the dentist stated the tooth had to come out and then nothing again
> it is now 4-14-14 going on 4 months still waiting in pain and discomfort PD states inmates
> will receive adequate dental care in a timely manor that is clearly not the case at all.

(docket # 1-1, Page ID 20).  On April 23, 2014, plaintiff received a Step I response from Stephen

Phillips which stated as follows:

Grievant was being seen for a try-in visit for an upper partial denture on 12-19-13 when he mentioned he had a hole in his tooth and wanted me to look at it.  Clinical evaluation of # 19 revealed a large nonrestorable carious lesion.  Grievant was advised that it would need extraction based on that evaluation.  Radiographs were not taken at that visit.  He was seen on 02-25-14 for delivery of his upper partial but did not mention the tooth or that he was having pain even though he claimed in a kite on 02-03-14 that it was 'a bit painful'.

(docket # 1-1, Page ID 21).  Stephen Phillips found no violation of policies or procedures.  Plaintiff had not been denied dental care.  His dental visit on December 19, 2013, had been non-urgent. Tooth # 19 was extracted on April 23, 2014, and the grievance was considered resolved.  (*Id.*).

Plaintiff pursued this grievance to Step II of the MDOC's grievance process.  Plaintiff stated that the dentist had ordered an x-ray and that it indicated that the tooth needed to come out.  Further, plaintiff indicated that he had not said anything about discomfort on February 25, 2014, because he was in the process of having his upper partial fitted.   He expressed dissatisfaction with the processing of his grievance: "The big question is how can dental and S. Phillips the dentist look into and investigate grievance that's aimed at and against them [. T]hat's like allowing a criminal to look into his own case[.]" (docket # 1-1, Page ID 24).  Plaintiff also complained that his interview had been too limited because he had only been asked why he would not sign off on this grievance and who told him not to sign off on this grievance.  (*Id.*).  Plaintiff's grievance was denied at Step II. The evidence indicated that there was no violation of policy or procedure.  The dental records did not support plaintiff's assertions that the dentist was lying.  (docket # 1-1, Page ID 25).  Plaintiff did not pursue this grievance through a Step III decision.  (docket # 12-3, Page ID 74).

### 3.      Grievance No. DRF 14-09-018920-1G

On September 2, 2014, DRF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No.  DRF 14-09-018920-1G.  In this grievance, plaintiff complained that he

should not have been charged a $5 co-payment for an urgent dental health care request. (docket # 14-2, Page ID 83). Plaintiff filed this lawsuit on September 16, 2014, long before the Step I response was due and certainly before any appeal through Step III of the MDOC's grievance process had been completed.

## Discussion

Defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). Plaintiff did not properly exhaust any claim that he is asserting against defendants.

Plaintiff's arguments that he should be excused from the PLRA's statutory exhaustion requirements are legally unsupported and unpersuasive. A purportedly "inadequate" investigation of a prisoner's grievance or a lack of review of a grievance by an "appropriate" supervisor may provide grounds to appeal to the next step in the grievance process. It does not excuse plaintiff's failure to appeal. "Exhaustion is required even if the prisoner subjectively believes the remedy is not available . . . and even where the prisoner believes the procedure to be ineffectual or futile." *Napier*, 636 F.3d at 222 (citations and internal quotations omitted). "An inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so[.]" *Hartsfield*, 199 F.3d at 309; *see Booth v. Churner*, 532 U.S. at 741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. Plaintiff did not properly exhaust any claim against

defendants.  I find that defendants have carried their burden on the affirmative defense and are entitled to dismissal of all of plaintiff's claims.

## **Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket # 11) be granted and that all plaintiff's claims against defendants be dismissed without prejudice.

Dated:   August 25, 2015                    /s/  Phillip J. Green
                                                     United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).